# WHEELING.

## LYNCH v. ANDREWS.

Submitted January 29, 1885.—Decided April 22, 1885.

1. The rights of parties to a suit are such as are settled by the ultimate results, and are in no respect affected by intermediate orders and decrees which are reversed or vacated before the final termination of the suit. (p. 755.)

2. *Pendente lite* purchasers are bound by the decrees entered affecting the property so purchased by them, although they may not be parties to the suit. (p. 756.)

3. If such purchaser has notice in fact of the litigation inviolvng the title to the property so purchased, his purchase will be deemed fraudulent. (p. 756.)

4. The statute of limitations does not run in favor of a *pendente lite* purchaser. Such purchaser in possession of land so purchased will not be regarded as holding it adverse to the parties to the suit during the litigation. (p. 757.)

5. Land is sold at a judicial sale, the sale confirmed and a conveyance made to the purchaser and he takes possession, the litigation continues, and after the purchaser has been in the actual possession of the land under such conveyance for more than ten years, the decrees ordering and confirming the sale are reversed and declared void, and the sale set aside for the want of jurisdiction in the court to order the sale; during all this time the taxes on the land are paid by the purchaser and the same is not charged for taxes to the owner and he pays no taxes on it, HELD:

  I. The possession of such purchaser under such void sale is not adverse to the owner. (p. 758.)

  II. The payment of the taxes by such purchaser inures to the benefit of the owner, and the State can have no claim against

| 25 | 751 |
|----|-----|
| 34 | 603 |
| 25 | 751 |
| 35 | 561 |
| 25 | 751 |
| 37 | 220 |
| 25 | 751 |
| 39 | 190 |
| 25 | 751 |
| 41 | 344 |
| 25 | 751 |
| 43 | 493 |
| 25 | 751 |
| 45 | 361 |
| 25 | 751 |
| 48 | 109 |
| 48 | 476 |
| 25 | 751 |
| 51 | 154 |
| 25 | 751 |
| 53 | 69 |
| 25 | 751 |
| d54 | 618 |
| 54 | 619 |
| 25 | 751 |
| d56 | 475 |
| 25 | 751 |
| d 59 | 240 |
| e 60 | 116 |
| 60 | 139 |
| 25 | 751 |
| 63 | 327 |
| 63 | 496 |
| 25 | 751 |
| 64 | 676 |
| 64 | 677 |
| 25 | 751 |
| j66 | 2 |

the owner for taxes on the land, and his title can not become forfeited for not also paying taxes on the land.   (p. 758.)

III. The vendee of such purchaser can occupy no higher position or acquire any better right to the land as against the owner during the litigation than that held and acquired by his vendor.   (p. 756 )

6. A suit held not to be removable to the Federal Court under the act of Congress of March 3, 1875.

The facts of the case are stated in the opinion of the Court.

*C. Boggess* for appellant.

*J. Bassel* for appellees.

SNYDER, JUDGE :

During the late war, Luther Haymond brought his suit in equity in the circuit court of Harrison county against R. Snowden Andrews, G. D. Camden and others, to enforce the payment of the purchase-money due on a tract of 819 acres of land which had been theretofore sold and conveyed by said Haymond to said Andrews.   In December, 1863, a decree was entered for the sale of the land, the sale was made and, in March, 1864, the same was confirmed. At said sale James Lynch became the purchaser and soon after took possession of the land.   The cause was further proceeded in and an appeal taken to this Court, which in September, 1883, entered a decree setting aside said sale and the decrees ordering and confirming the same.   This Court also held that James Lynch, the purchaser, became a party to the suit from the time of his purchase and was bound by all proceedings subsequently had therein; and the cause was remanded to the circuit court for further proceedings there to be had in accordance with the directions and mandate of this Court.   A full statement of the facts and directions of this Court will be found in the report of the case under the title of *Haymond* v. *Camden*, 22 W. Va. 180–208.

After the cause had been returned to the circuit court according to the mandate of this Court, that court by a decree entered in January, 1884, among other matters, ordered that the said R. Snowden Andrews should be restored to his pos-

session of said land, and for that purpose awarded him a writ of possession.

To enjoin and inhibit the said Andrews from obtaining possession of said land and enforcing said writ, Josiah W. Lynch and Peter Lynch filed their petition in said circuit court alleging therein, that said land had been conveyed to said James Lynch, the purchaser as aforesaid, by a commissioner appointed by the court, and that after it had been so conveyed, the said James Lynch by deed of general warranty dated February 28, 1865, and in consideration of $18,725.00 paid by them to him, conveyed said land to petitioners; that from that time they have had and still have the actual possession of said land adverse to the said James Lynch and all other persons; that their adverse possession has continued for more than ten years under said deed, and that by reason thereof a good title has vested in them; that during the time they have so held possession they have put valuable permanent improvents on said land and paid heavy taxes thereon; that they are advised their vendor, the said James Lynch, paid on account of his purchase of said land $12,110.00, with interest thereon from March 12, 1864, which was applied to discharge the vendor's lien due thereon from said Andrews; that they are not parties to said suit and had no notice of the decree ordering a writ of possession to issue to put said Andrews in possession of said land. They pray that said Andrews may be perpetually enjoined and inhibited from all further proceedings to turn them out of possession of said land; or if the Court should hold that they have not perfect title to said land, then the said Andrews be enjoined from all further proceedings to put them out of possession until a jury shall ascertain the value of the improvements put by them on said land, and the amount so ascertained, and the purchase-money paid by said James Lynch, together with the taxes paid by them, shall, subject to proper discounts, be paid to them, and for general relief.

The said petition was sworn to, and on February 13, 1884, the judge of said circuit court awarded an injunction as prayed for therein.

The defendant Andrews filed his answer and gave notice that he would on March 28, 1884, move the judge of said court

to dissolve said injunction. This notice was served on March 19, 1884, and on the 22d day of said month the said petitioners filed with the clerk of said court their petition and bond with security for the removal of said cause to the circuit court of the United States for the district of West Virginia, under the act of Congress of March 3, 1875. The said petition shows that said Andrews was a citizen of the State of Maryland, and the petitioners were citizens of the State of West Virginia.

The defendant, Andrews, in his answer which was also sworn to, after setting out at some length the proceedings in the original cause as shown by the report of it in 22 W. Va. 180, avers, upon information, that at the time of the sale of said land under the decree of December 1863, the petitioners and James Lynch were jointly interested in the purchase thereof though the said James alone was reported as the purchaser, and that in accordance with such agreement petitioners became bound with said James for and paid a part of the purchase money for the land; that petitioners and said James are brothers and that they, all three or some of them, during the late war took possession of said land under the purchase thereof under the said decree of December, 1863, claiming title under said decree and have so continued ever since; that it is not true that petitioners paid the whole of the said purchase money to said James for said land, nor is it true that they had no notice of the entering of the decree awarding the writ of possession to put him in possession of said land; that on the contrary petitioners had full information of the purport of said decree at the time it was entered as well as of all the proceedings had in the cause reversing and setting aside the order and confirmation of the sale under which they and the said James claimed title to and possession of said land; that petitioners are *pendente lite* purchasers and as such were fully represented in all said proceedings, &c., &c.

The cause came on to be heard before the judge of said court in vacation, March 28, 1884, upon the petition, the answer of Andrews, the exhibits, the petition and bond for the removal of the cause to the circuit court of the United States, the defendant's notice and motion to dissolve the petitioner's injuntion and the argument of counsel on both sides, and thereupon the said judge made this order:

"It appearing that the amount in controversy in this suit exceeds $500.00, that said bond is sufficient, and that the plaintiffs are and were at the time of the institution of this suit citizens of the State of West Virginia, and that the defendant is and was at the time of the institution of this suit a citizen of the State of Maryland. On consideration whereof, the undersigned, the judge of the circuit court of Harrison county, is of opinion that because of the filing of said petition and bond for the removal of this cause to the said circuit court of the United States, no order dissolving said injunction can or should be now made. It is therefore adjudged, ordered and decreed that said motion to dissolve said injunction be overruled."

From this decree the said Andrews obtained this appeal.

It will appear from the preceding statement that all the interest claimed by the appellees, Josiah W. and Peter Lynch, in the land in controversy, was acquired subsequent to the institution of the original cause of *Haymond* v. *Camden et al*, and not only this, but that their claim is derived from and under James Lynch, who acquired his claim to said land after the institution of said suit and under and by virtue of decrees entered therein; that by his purchase of the land, the said James became a party to the suit and he was such party at the time said decrees were reversed and his purchase annulled. The said James was also a party at the time the decree of January, 1884, was entered by the circuit court, awarding the writ of possession complained of and sought to be enjoined by the appellees.

It is a fundamental principle, that the rights of parties to a suit are only such as are settled and fixed by the ultimate result of the suit, and are in no respect affected by interlocutory or intermediate orders and decrees which are vacated and annulled by the final determination and decrees of the cause. It therefore follows necessarily, that by the reversal of the decrees, upon which the title and claim of the said James to the land was derived, and by the vacation of the sale to him, his claim and title ceased entirely. He lost all his interest and title and occupied no other relation to the land than such as may have been accorded him by the decrees vacating his purchase. This position does not seem to

be questioned by the appellees, but they claim that they have by their purchase from the said James acquired an independent title or rights superior to those of their vendor which they are entitled to assert not only against the said James, but against the title and possession of the appellant from whom the said James acquired his temporary interest which was subsequently vacated.

The appellees, being *pendente lite* purchasers of the land, it is certain that they can not as such purchasers maintain any claim to it not accorded to them or their vendor by the final result of the suit.    Purchasers during the pendency of a suit are bound by the decrees entered therein although not parties to the suit.    The litigating parties are exempted from taking any notice of the title so acquired.    Such purchasers are held bound by the decrees that may be made against the person from whom they derive title.    This rule may operate harshly in some cases, but it is founded upon a great public policy ; for otherwise, alienations made by parties during the pendency of the suit might defeat its whole purpose and there would be no end to litigation.    And hence arises the maxim, *pendente lite, nihil innovetur ;* the effect of which is not to annul the alienation, but only to render it subservient to the rights of the parties in the litigation.    As to the rights of these, the alienation is treated as if it never had any existence, and it does not vary them.    The law does not allow litigating parties to give to others, pending the litigation, rights to the property in dispute so as to prejudice the opposite party.    And if such purchaser had actual notice of the title in dispute or of the pendency of the litigation, he will be regarded as co-operating in a fraud and his purchase will be fraudulent.    The general doctrine on this subject has been repeatedly affirmed by this Court.—*Harmon* v. *Byram*, 11 W. Va. 511 ; *White* v. *Perry*, 14 *Id.* 66-76 ; *Zane* v. *Fink*, 18 *Id.* 693-734 ; *Arnold* v. *Casner*, 22 *Id.* 444 ; 1 Story's Eq. Jur. § 406.

The very claim asserted by the appellees shows that they derived their title from James Lynch, and also that he acquired his title during the pendceny of the suit.    Their title papers exhibit these facts and they are chargeable with notice of them.    They are not, then, either innocent or *bona fide* pur-

purchasers; but, on the contrary, must be regarded as co-operating with their vendor in an attempt to defeat the purposes of the pending litigation, and their purchase was fraudulent according to the law as before stated.

But from their petition, it seems, that the appellees rely principally, if not entirely, upon the assertion of a claim of adverse possession for more than ten years as a bar to the rights of the appellant. It is undoubtedly true, that where a purchaser is in the actual possession of land under a complete legal title, such as a deed purporting to convey the land, he will be considered as holding adversely to all the world including his vendor from whom his title and possession are derived. *Core* v. *Faupel*, 24 W. Va. 238. But while this is sound law, it is also well settled, that the statute of limitations has no operation upon the subject of litigation. It ceases to run at the time the litigation commences if it has already commenced; and if the cause of action arises during the pendency of the litigation, the statute does not commence to run until the litigation has ended. The cause of action, if the appellees ever had any, in the case at bar commenced during the pendency of the litigation over the land in controversy and that litigation is still pending. The adverse possession of the appelless, therefore, is wholly ineffectual as against the rights of the appellant. They, as we have seen, stand in the same relation to the land in controversy as does their vendor, James Lynch; they are his vendees, privies in estate, holding and claiming as *pendente lite* purchasers; and as such they are as much bound by the proceedings in the suit as their vendor; they can of course, claim no protection from the statute of limitations or adverse possession that he could not claim, and he being a party to the suit has no such claim whatever.

In *Simpson* v. *Edmiston*, 23 W. Va. 675, this Court held, that, " A purchaser of land sold for delinquent taxes, after he acquires a deed therefor, will be deemed as holding adversely to the person in whose name the land was sold; and if such person denies the validity of the tax-deed and still claims the land, he must keep the land on the assessor's book in his name and pay the taxes thereon. The payment of such taxes on such land by the tax-purchaser in his own name will not inure to the benefit of the former owner; and, therefore, such

former owner will not be required to reimburse such purchaser for taxes so paid in his name by the court which declares void and sets aside such tax-deed."

It has been suggested, that as the appellees here have paid the taxes on the land in controversy, and the appellant has not, they, under said decision are entitled to hold said land against the appellant. Such a suggestion could only arise from a plain misapprehension of said decision. That case involved adverse claims to the same land. The pretended tax-title, under which the tax-purchaser claimed, was held to be not only void, but an absolute nullity as a conveyance; it was also held, that no privity of title or estate in the land existed between the tax-purchaser and the owner, that it transferred no title or right whatever, but in as much as it sufficiently described the land to make it color of title and the foundation of an adverse claim to the land, it operated as the inception of an original, separate and distinct claim of title, leaving the true and real title in the owner unimpaired. Consequently, from the time the land was placed on the assessor's book in the name of the tax-purchaser under this separate and new claim of title, there were two independent claimants for the same land under distinct, unconnected and hostile claims of title—the one asserted by the tax-purchaser and the other by the true owner; and, therefore, according to the true construction of section 3 of Article XIII of our Constitution, the State exacted taxes from both these adverse and hostile claimants.

It is expressly stated in that case, that when two parties claim the same land in privity and by the same title, such as when the relation of vendor and vendee subsisted between them and neither asserted an independant or hostile title to the other, the payment of the taxes by one party would operate as a full satisfaction of the taxes legally chargeable on the land, and the State could have no further claim for taxes against the land under the title thus held in privity and successively by the vendor and vendee.—23 W. Va. 682-3.

In the case at bar, there is no pretense that the appellees and their vendor, James Lynch, or either of them, ever asserted any claim or title to the land in controversy in hostility to that of the appellant. They claimed and held it un-

der and not independent of the appellant's title. They claimed they had his title and not a new and distinct title or color of title. They were claiming as vendees in subordination to and under the same title. When, therefore, the same power, the court, which had unadvisedly and without legal authority attempted to effect a transfer of the title, in the same suit corrected its error and declared the pretended transfer inoperative and void, the foundation of the appellees' claim, and the claim itself were wholly destroyed and annihilated. This case is very different from that of *Simpson* v. *Edmiston*, and the doctrine there applied has no application here.

Having thus reached the conclusion that the appellees were *pendente lite* purchasers and bound by the decrees and proceedings had in the suit of *Haymond* v. *Camden et al*, and that they have no independent or adverse claim to the land in controversy, it follows that their petition in said suit was improperly filed and the injunction improvidently awarded thereon. Being bound by the decrees in said suit they clearly had no right to institute an independent proceeding or suit for the purpose of collaterally assailing said decrees and obstructing their operation. If said decrees, or any of them were erroneous, they could only be corrected by appeal or other proceedings in review had in that cause. The appellees are entitled to defend their rights in said suit in the name of their vendor, James Lynch; or upon a proper petition filed in the cause, showing that according to the rules of equity practice they are entitled thereto, they may be made formal parties to the said cause.

From what has been said, it is apparent the appellees were not in a condition to remove the controversy attempted to be raised by their petition to the circuit court of the United States under the act of Congress of March 3, 1875. That act requires the petition for removal to be filed in the "State court before or at the time at which the cause could be first tried and before the trial." The controversy here sought to be removed was simply a part of a suit, which had been pending for years, and in which the merits of the controversy had been fully adjudicated. *Cable* v. *Ellis*, 110 U. S. 389.

For the foregoing reasons, I am of opinion, that the decree

of the judge of the circuit court be reversed with costs to the appellant, and this Court proceeding to enter such decree as said circuit court should have entered, it is ordered that the injunction awarded the appellees be dissolved and their petition dismissed with costs to the defendant, Andrews, in said court.

REVERSED.