ABRAHAM J. EPSTEIN *vs.* WILLIAM H. DUNBAR & others.

Suffolk.  March 10, 1915. — September 16, 1915.

Present: RUGG, C. J., LORING, DE COURCY, & CARROLL, JJ.

*Landlord and Tenant. Estoppel. Equity Jurisdiction,* To enjoin partial eviction of tenant, Damages.

Where the owner of a building, after giving to a tenant a lease of one of the floors of the building, closes an entrance of the building on a business street which existed when he gave the lease and substitutes another entrance equally convenient to the lessee through a building which the lessor does not own, and later the lease is "renewed and extended" by an instrument which incorporates by reference the description of the demised premises contained in the first lease as bearing the street number of the removed entrance, and after such renewal the lessor continues to treat the substituted entrance as bearing the number of the removed one, and where the owner of the substituted entrance, rightfully having control of it, closes its connection with the tenant's premises, so as to shut him off from all access to the street on which the removed and the substituted entrances opened, in a suit in equity by the lessee against his lessor to-enjoin him from evicting the plaintiff from the use of the substituted entrance and for damages, the defendant is estopped to deny the existence of the substituted entrance as a part of the demised premises and as against the plaintiff cannot show title in another to relieve himself from liability.

In the case stated above the defendant, not having in fact the title to such substituted entrance, cannot be required to reopen the entrance which he does not control, and must respond in damages.

In the same case it was *held*, that the partial eviction did not necessarily terminate the lease, so that it was not essential that the tenant should abandon the entire premises before seeking relief in equity.

BILL IN EQUITY, filed in the Superior Court on December 29, 1913, against the defendants Dunbar and Hammond as the owners, as trustees, of a building on the corner of Essex Street and Harrison Avenue in Boston, and as the lessors to the plaintiff of all the second floor of that building, and against the defendant Wirth as the lessee of the whole of the adjoining building numbered 37 on Essex Street, praying that the defendants Dunbar and Hammond might be ordered to restore the stairway which formerly connected the plaintiff's premises with the entrance numbered 41 on Essex Street and to reopen that entrance to the building, and that, until such stairway should be restored and such door reopened, the said defendants should keep open a door in the partition wall of the building and maintain a stairway therefrom connecting with the entrance to the adjoining building numbered 37 Essex Street.

The case was heard by *Pierce,* J. (on March 4, 1914). He found the facts that are stated in the opinion, and made a decree ordering that (1) as to the defendant Wirth the bill was to be dismissed with costs; that (2) the plaintiff was not entitled to have restored the stairway which formerly connected the premises with the doorway numbered 41 Essex Street; that (3) the plaintiff was not entitled to have reopened the door in the partition wall referred to in the plaintiff's bill; that (4) the destruction of the doorway referred to in the preceding paragraph was a partial eviction of the plaintiff as well as a violation of the implied covenant for quiet enjoyment; that (5) upon the plaintiff's furnishing the defendants Dunbar and Hammond with a bond in the penal sum of $2,000, with sufficient sureties conditioned upon payment to the said Dunbar and Hammond within thirty days after the entry of the final decree herein of the net amount of all rent and other moneys that might then be due from the plaintiff under the leases or because of the occupancy by the plaintiff of the whole or any part of the premises described in the leases, and interest thereon, the defendants Dunbar and Hammond be enjoined from ejecting the plaintiff from the premises now held by him under leases from the defendants Dunbar and Hammond

dated October 30, 1912, and March 21, 1911; and that (6) the bill was to be retained for the assessment of damages, such damages to be determined upon the theory that the destruction of the doorway referred to in the paragraph numbered (3) was a partial eviction and a violation of implied covenants in the leases dated October 30, 1912, and March 21, 1911, for quiet enjoyment.

The defendants Dunbar and Hammond appealed from the decree, the evidence having been reported by a commissioner appointed under Equity Rule 35.

*J. B. Studley,* for the defendants.

*J. E. Hannigan,* for the plaintiff.

RUGG, C. J.   On April 16, 1908, the plaintiff as lessee and the defendants Dunbar and Hammond as lessors executed a lease for the term of three years of "all the second floor of the building at the corner of Essex Street and Harrison Avenue in the city of Boston, numbered 41 Essex Street, except the room now occupied by M. Wade." At that time the main entrance to the demised premises was numbered 41 on Essex Street, although there was a rear entrance on Harrison Avenue, narrow and inferior compared with the other, used chiefly but not exclusively for the receipt and delivery of merchandise. The building which bore the number 37 on Essex Street belonged to different legal and equitable owners from that numbered 41, although certain of the legal owners were the same, and the defendant Dunbar, an owner in each estate, apparently had full charge of both estates. In December, 1908, the lessors of the plaintiff, conceiving that the space occupied by the doorway and stairs at number 41 Essex Street was too valuable to be used longer for that purpose, removed the stairs and door and by opening a doorway in a partition wall connected the plaintiff's premises with a different stair and doorway opening at number 37 Essex Street. Thus the plaintiff was deprived of the means of ingress and egress existing at the time of the execution of the lease, and another more convenient and attractive was afforded, which was not over land owned exclusively by his lessors. While nothing was said about any use of the new way, it was the purpose of his lessors to lead the plaintiff as lessee to believe that it was for his use in substitution for the old, and he silently accepted the tacit proposal of his lessors that, if he would permit the destruction of the old way, he should

have the new one in place of it. Thereafter, so far as concerned the lessors and the lessee, the new entrance was treated as number 41 Essex Street. On March 21, 1911, the plaintiff and his lessors signed and sealed an instrument which provided that "The lease dated April 16, 1908, . . . of premises in the building at the corner of Essex Street and Harrison Avenue in the city of Boston, Massachusetts, is hereby renewed and extended from the expiration thereof on April 30, 1911, for a further term of five (5) years." On October 30, 1912, the defendants Dunbar and Hammond demised to the plaintiff by lease to expire May 1, 1916, "the balance of the second floor of the building at the corner of Essex Street and Harrison Avenue, in the City of Boston numbered 41 Essex Street, not now occupied by him under existing lease dated April 16, 1908, and extended March 21, 1911 (being the room lately occupied by M. Wade)." The plaintiff occupied the premises for the carrying on of his business as a wholesale dealer in woolen goods. The plaintiff's lessors, after removing the stairs and the door number 41 Essex Street, leased the space to the defendant Wirth, who also is the lessee of the entire building number 37 Essex Street. Wirth, in accordance with his right as lessee and after permission from the defendant Dunbar, has closed the door which in December, 1908, the defendants Dunbar and Hammond opened in the partition so as to give access to the plaintiff's premises from number 37 Essex Street, and the plaintiff thus is deprived of all means of entrance from Essex Street.

A decree was entered in the Superior Court dismissing the bill with costs as to the defendant Wirth and in effect dismissing so much of it as seeks to have the entrance at number 41 Essex Street restored and the doorway in the partition wall reopened upon the plaintiff's giving bond to pay arrears of rent, but enjoining the lessors from evicting him and retaining the bill for the assessment of damages. No appeal has been taken from the finding in favor of the defendant Wirth, and therefore he is exonerated from liability to the plaintiff.

This narration of the material facts as found by the Superior Court shows that the lessors have so conducted themselves with reference to a reasonable means of access to the demised premises from Essex Street as to be estopped from denying its existence.

When the original lease was executed, there was the entrance at number 41 Essex Street. Later and during the term of the first lease and for their own profit they closed this entrance but substituted another quite as convenient to the lessee. They then "renewed and extended" the lease by an instrument which incorporated by reference without variation the description of the demised premises contained in the first lease as being "numbered 41 Essex Street," the use in fact continuing the same by the entrance then numbered 37 on Essex Street. Continuously they refer to the premises as on Essex Street and they direct mail to the lessee at Essex Street. While of course the rights of strangers cannot be affected by estoppel, the conduct of the lessors has been such that they cannot now deny as against the plaintiff that there is reasonable access to his premises from Essex Street. When the first lease was given there was access from number 41 Essex Street. The circumstances under which that entrance to the demised premises was destroyed and that at number 37 was opened were such as to warrant the court in finding, if, indeed, they did not require a finding, that the new was substituted for the old entrance. *Smith* v. *Barnes*, 101 Mass. 275. The execution by the lessors of the new lease with precisely the same description of the demised premises as the old, and without giving the slightest intimation that there was any change in the property, renders it inequitable that they should assert now that there is a change. Their conduct brings them within the elementary limits of the doctrine of estoppel. They maintained silence, but by fair interpretation their instrument and their conduct said to the plaintiff as a reasonable man that the thing about which the contract was made, namely, the demised premises with all its appurtenances including its Essex Street entrance, was unchanged. Although there was no express representation by spoken words, all the antecedent and contemporaneous circumstances and the demeanor of the lessors up to that moment were equivalent to an assertion that the substituted entrance at number 37 Essex Street was a part of the demised premises. There is ample ground to support the conclusion that the plaintiff was led to believe by the lessors' conduct that the situation remained the same so far as concerned his right of access. An obligation in good faith rested on the lessors to speak if the

premises which they were leasing again to the plaintiff by identical description were not the same as those described in the first lease. There were no notorious public facts or other matters indicating a difference in the demised premises, of which it might be assumed that the tenant had notice. In the light of all these attendant factors it is of no consequence whether the lessors have title to the substituted entrance or not. As against the plaintiff they cannot show title in another to relieve themselves from liability. But, as they have not the title, they cannot be required to reopen the entrance and must respond in damages.

Whether the description in the lease by construction might be held to mean a reference to the stairway actually used in connection with the premises need not be considered. See *Cowen* v. *Truefitt, Ltd.* [1899] 2 Ch. 309. However that may be, the conditions are such as to estop the lessors from setting up the title to the Essex Street means of access in another.

The lessors rely upon *Howe* v. *Alger*, 4 Allen, 206, *Cole* v. *Hadley*, 162 Mass. 579, and like cases where it is held that in a deed a description of granted premises as bounding upon a street is not a grant of a right of way in the street when the grantor owns no right in such street. Those cases are distinguishable. In the case at bar the relations and conduct of the parties for a considerable period of time constituted a construction of the lease which prevents the lessors from asserting now a different construction.

The facts show a partial eviction. *McCall* v. *New York Life Ins. Co.* 201 Mass. 223. *Nesson* v. *Adams*, 212 Mass. 429. *Boston Veterinary Hospital* v. *Kiley*, 219 Mass. 533. The premises are no longer suitable for the purpose for which they were hired. *Raynes* v. *Stevens*, 219 Mass. 556, is unlike the case at bar. But the lease was not thereby necessarily determined and it is not essential that the tenant should abandon the entire premises before seeking relief in equity. *Smith* v. *McEnany*, 170 Mass. 26. *Leishman* v. *White*, 1 Allen, 489. *Colburn* v. *Morrill*, 117 Mass. 262.

*Decree affirmed with costs.*